# CHARLESTON

## McMullen v. Blecker.

### Submitted March 10, 1908.    Decided March 17, 1908.

1. Partition—*Leased Property.*

   A purchaser of the interests of some of the heirs of coal in place, leased by their paternal ancestor with right to the lessee to mine it to exhaustion in consideration of a stipulated royalty, or a fixed sum in lieu thereof if a minimum quantity is not mined annually, the lease to be void upon default in payment of such fixed sum, is not entitled to partition of said coal, in his suit against other heirs for that purpose, during the life of such lease.   (pp. 90, 91.)

2. Guardian and Ward—*Action by Ward.*

   A guardian as such cannot maintain an original suit, or intervene in such partition suit, for an accounting of royalty due his ward under said lease; such suit being properly maintainable only in the name of the ward by next friend.   (p. 92.)

Appeal from Circuit Court, Randolph County.

Bill by D. F. McMullen against Ethel Blecker. Decree for defendant, and plaintiff appeals.

*Affirmed in part.   Reversed in part.*

Claude W. Maxwell, for appellant.

J. B. Ward, for appellee.

Miller, Judge:

Ira Kettle, October 8, 1894, made to Samuel Green and others a lease of all the coal under his lands in Randolph county on which he resided, found on survey to contain 39 acres, in consideration of a royalty of five cents per ton; and it was mutually agreed therein that, in event that they failed to mine as much as 20,000 tons annually, the lessees should

pay the lessor $100 for each year of such failure, and in default of such payment the lease should be void. These lessees, by contract of July 31, 1902, in consideration of $7,000, conveyed with general warranty an undivided four fifths interest in said lease to Isaac L. Ritter, Andrew Hogg and Wm. Larew, said grantees to pay Kittle the royalty provided for in said lease; and these grantees in turn, December 5, 1902, transferred to the Ritter Coal Company all rights so acquired by them. Coal was mined under said lease, and until the death intestate of the lessor, occurring some years later, the royalty was paid to him. Kittle left surviving him eleven heirs, including the infant defendant, Ethel Blecker, a grandchild. Subsequently the plaintiff, D. F. McMullen, acquired by separate deeds the interests of all said heirs except the defendant in said coal, each of said deeds granting unto him an undivided one-eleventh interest therein with mining rights.

In March, 1906, the plaintiff filed his bill against said Ethel Blecker and D. H. H. Arnold, described therein as "guardian *ad litem*," setting up said interests acquired by him, and alleging that, after execution of said lease, he and others had become "owners of the Ritter Coal Company and for a while operated the same;" that title to one-eleventh interest in said coal was outstanding in said Ethel Blecker, and that he was owner of coal lands adjoining said 39 acre tract; praying that said 39 acres of coal be partitioned and his interests set off to him next to his other lands, or that, if not susceptible of division in kind, it be sold and the proceeds divided between the parties according to their respective rights. By an order entered in the cause April 20, 1906, D. H. H. Arnold, named in the bill as guardian *ad litem*, was appointed such by the court, and afterwards filed a formal answer. A demurrer to the bill was filed on behalf of the defendant, the grounds therefor being that the plaintiff had matured his bill without appointment of a guardian *ad litem*, that the guardian, Louisa Kelly, had not been made a party, and that the bill failed to show the plaintiff had any interest in the coal held under said lease.

Said Louisa Kelly, as guardian, also intervened by answer, in which she admitted said lease and the mining operations thereunder by the Ritter Coal Company, and, in more ampli-

fied terms than the bill, that the plaintiff was owner and had controll of the stock of said company, wherefore said infant was estopped from in anywise disposing of her interest to any person except the plaintiff, denying the right of plaintiff to partition, and alleging that the Ritter Coal Company paid the royalty provided in said lease until about March, 1904, but since then has failed to pay the same, although many tons of coal have been mined, for which there is a large sum due said infant; charging that the proper parties are not before the court; and asking for accounting of the royalty so due, for dismissal of plaintiff's bill, and for general relief. To this answer the plaintiff offered, but was denied permission, to file a special replication, wherein he averred that he was only one of the many stockholders of the Ritter Coal Company, which, though owner of said lease and then operating same, had nothing to do with the ownership of the coal, and that any suit for settlement of royalty should be brought against it.

Upon hearing, on bill and answers, November 22, 1906, the plaintiff's bill was dismissed, and he adjudged not entitled to the relief prayed for; but, the court being of opinion that the defendant was entitled to the affirmative relief asked in her answer by her guardian, there was a reference to a commissioner to ascertain the royalty due her from the plaintiff under said lease. The commissioner reported this to be $123.74, which report, by final decree of April 16, 1907, was confirmed, and the plaintiff adjudged to pay Louisa Kelly, guardian, for said infant, or her attorney of record, said sum with costs. The cause is here upon appeal from these decrees by the plaintiff.

Two material questions are presented: First, was the plaintiff entitled, on the showing of his bill, to partition of said coal? Second, if not, was the guardian as such entitled to intervene by cross bill for the affirmative relief decreed?

We will first consider the rights of the plaintiff as presented. The pleadings on neither side are forms which would be followed hereafter, not even by the counsel who prepared them. Aided by the exhibits however, we may be able to determine the legal status of the parties and properly adjudge their respective rights. The status of the plaintiff is that he has acquired a majority of the stock of the Ritter Coal Com-

pany, which succeeded to all rights of the lessees under the lease from Kittle and is still operating said lease. . There are other interested stockholders besides him. Therefore, as against said company and its rights under the lease, there can be no partition of the coal in kind. The lease has never been forfeited by any act of the lessor or his heirs, if for any cause it could have been. No part of the coal could be set off in kind to the plaintiff or defendant and operated independently of the company. So long as the right of the company to take the coal under the lease subsists, the only right of the lessor or his heirs, or of McMullen as grantee, is to have the royalty—a simple money demand. The lessee has the right to mine the coal to exhaustion, taking the very substance of the thing sought to be partitioned. The plaintiff has no interest except in the coal. The defendant has an interest which pertains not only to the coal but to the surface as well.

It is true, as a general rule, that a subsisting lease on land, though material in determining whether partition should be in kind or by sale, is no defense to partition thereof. 21 Am. & Eng. Enc. Law 1162 and cases cited. Nevertheless, when the thing sought to be partitioned has -been in effect, as in this case, sold, though subject to be reinvested for breach of a condition, there is nothing upon which partition could operate until the happening of the event which would reinvest title. Moreover, in this case it appears the plaintiff is a controlling stockholder in the Ritter Coal Company, the owner of the lease, and, though it is not shown, may control the directory.

It is held in *Cannon* v. *Lomax*, (Neb.), 13 Am. St. Rep. 739, that tenants in common are not entitled to partition while holding the common property under an unexpired lease from their ancestor. The principle of this case is put upon the ground that partition is the right to severance when there is rightful unity not only of title but of possession, and that unless the title of both parties is clear equity cannot decree partition—based on *Wilkin* v. *Wilkin*, 1 Johns. Ch. 117; *Garrett* v. *White*, 3 Ired. Eq. 131; *Ramsay* v. *Bell*, 3 *Id.* 209; 1 Story Eq. section 650.

We held in *Merritt* v. *Hughes*, 36 W. Va. 356, that a reversioner or remainderman can not compel partition dur-

ing continuance of the particular estate.   That case involved
the application of this rule to a vested freehold estate for
life, and not, as does this case, the right to take coal
to exhaustion; but the reason for the rule there is cer-
tainly applicable here.    In the former as in the latter
·case, persons so situated are not entitled to possession of the
thing to be partitioned; and an additional reason given in the
*Merritt   Case* is that any partition at the instance of the
remainderman, though equal when made, might be unequal
when the estate should vest in possession.   This principle of
inequality is particularly applicable here.   While the lease
gives right to the lessee to exhaust the coal, without limit as
to time, yet the lease may be forfeited, and, when forfeited,
by its terms not only does the right to take the coal termi-
nate, but the lessor is given right to take charge of the prop-
·erty with all improvements thereon free from any claim of
the lessee—a very substantial right.   We think the court
was clearly right in denying plaintiff partition.

We will next consider the right of the guardian to inter-
vene by answer or cross-bill.   She was permitted to come in
and file an answer for affirmative relief, without having been
made a formal party defendant.   It is a question, which we
need not decide, whether the relief she asked was germane to
the purpose of the original bill.   That sought partition.   The
answer in this particular was in no way defensive, and the
object it sought was apart from and in no way connected
with the subject of partition.   But, conceding the right of
the infant to the royalty and that the respondent was prop-
erly before the court with her answer, we do not think she
as guardian could, either by original or cross-bill, maintain
such suit.   In no case can a cross-bill be filed by one who
·could not have filed an original bill for the same purpose.
1 Hogg. Eq. Pro., section 197, where the author says:   "It
is a general rule that a cross-bill can not be filed by persons
not parties to the original suit, especially on a claim which
would not be maintainable by the original defendants."   It
has been held by this Court that a guardian can not as such
institute upon contracts not made with him affecting the
infant's interests; that such suits must be in the name of the
infant by next friend.   *Burdett v. Cain*, 8 W. Va. 282;

*Fowler* v. *Lewis*, 36 W. Va. 112; *Lawson* v. *Kirchner*, 50 W. Va. 344; 1 Hogg. Eq. Pro., section 66.

Our conclusion is that the guardian had no right to intervene in this suit for an accounting of royalty; and, as it appears the Ritter Coal Company, and not the plaintiff in his individual capacity, would be liable for the royalty, the decree therefore against the plaintiff was erroneous for this reason also. We therefore affirm the decrees appealed from in so far as they dismissed the plaintiff's bill, but in so far as they granted the guardian affirmative relief against the plaintiff they are reversed, and the cross-bill is dismissed.

*Affirmed in part.     Reversed in part.*