247 S.E.2d 712 (1978)
CONSOLIDATED GAS SUPPLY CORPORATION
v.
Marie RILEY et al.
No. 13828.
Supreme Court of Appeals of West Virginia.
July 11, 1978.
Dissenting Opinion September 20, 1978.
*713 James C. West, Jr., Jones, Williams, West & Jones, James P. Martin, Clarksburg, for appellants.
Patrick D. Deem, James A. Russell, Steptoe & Johnson, Clarksburg, for appellee.
MILLER, Justice:
Appellants complain about the propriety of a summary judgment obtained by appellee, Consolidated Gas Supply Corporation (herein Consolidated Gas) in a partition suit it filed against appellants who were individual co-owners of oil and gas underlying three tracts of land in Lewis County. We reverse.
Consolidated Gas alleged in its complaint that it was the owner of an eleven-twentieths undivided interests and the lessee of all the oil and gas underlying the three tracts of land. It also stated that the oil and gas property was incapable of being partitioned in kind and that the interest of all parties in said property would be promoted by sale of the same. The appellants answered the complaint denying most of the material allegations contained therein.
The appellants specifically denied that the oil and gas could not be partitioned in kind, that a partition by way of sale would promote their interests, and asserted that their interests would be materially prejudiced by a sale.
Consolidated Gas filed a motion for summary judgment, the entire substance of which was that the court should "pursuant to Rule 56 of the West Virginia Rules of Civil Procedure . . . enter summary judgment for the plaintiff on the ground that there is no genuine issue as to any material fact in this civil action between plaintiff and defendants, and, therefore, plaintiff is entitled to judgment in its behalf as a matter of law."
No affidavits, stipulations or discovery procedures were filed either with the motion or in opposition thereto. Consolidated Gas filed copies of various deeds showing how it acquired its eleven-twentieths ownership interest in the oil and gas.
At the hearing on the plaintiff's motion an order was entered granting the summary judgment. The sole reason stated in the judgment order was: "The finding of the court that no genuine issue as to any material fact in this action [exists] between the parties hereto and that said motion should be sustained."
The order appointed counsel of Consolidated Gas as special commissioner to conduct a public auction and offer for sale for cash the oil and gas property, subject to Consolidated Gas' existing oil and gas lease.
Nothing in the record suggests the basis of the trial court's conclusion that no genuine issue of any material fact existed. *714 On appeal, Consolidated Gas asserts that, as a matter of law, it had an absolute right to partition the property by way of a sale. We assume it is on this theory that the summary judgment was granted. Under settled principles governing summary judgment, we need only determine if there was a genuine issue of material fact. Cassella v. Weirton Construction Company, W.Va., 241 S.E.2d 924 (1978); Aetna Casualty and Surety Company v. Federal Insurance Company of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963).
At common law the right to partition was available only by way of a division in kind and was limited to one class of co-ownerscoparceners who received their interest through descent. It was the involuntary nature of their receipt of title that originally provided the right to partition. The history of the expansion of the right to compel partition lies in legislative enactments.[1] These principles were generally recognized in Loudin v. Cunningham, 82 W.Va. 453, 96 S.E. 59 (1918), where the Court stated:
"The common law did not authorize a sale of lands jointly owned, in case partition could not be made; and only that class of joint owners technically called coparceners could compel partition; that is, heirs inheriting from the same source at the same time. But by statute enacted in Virginia at an early date, and adopted by this State, . . . tenants in common and joint tenants were also given the right to compel partition." [82 W.Va. at 456, 96 S.E. at 60]
Because our statutes governing involuntary partition have been subject to a number of amendments over the years, our earlier cases must be read in light of subsequent statutory changes to what is now W.Va. Code, 37-4-1, et seq.
The argument advanced by Consolidated Gas is that W.Va. Code, 37-4-1, provides an absolute right to compel partition for those interests therein set out.[2] The point is made that in 1939 the Legislature intended to provide an absolute right to partition of oil and gas by amending this section and adding in the first sentence this language: ". . . of real property including minerals and lessees of mineral rights other than lessees of oil and gas minerals . . . ."
While W.Va. Code, 37-4-1, is drawn in mandatory language, if partition in kind is not feasible this Court has never interpreted the statutory right to partition by sale as absolute. W.Va. Code, 37-4-3. Consolidated Gas does not seek partition in kind, but a partition through sale. This procedure is purely statutory, and while the statute has been altered over the years, this Court has consistently held that the statutory requirements must be met. In Loudin, a construction was made of Chapter 79, Section 3 of the 1913 Code, the forerunner of our present W.Va. Code, 37-4-3, wherein the Court stated:
"A cotenant cannot have the land sold rather than partitioned, as matter of right, the right of sale being only an incident of, and subordinate to the right of partition. Certain facts must exist before the court is authorized by the statute to sell. It must appear (1) that partition cannot be conveniently, or equitably made, and (2) that the interests of all the joint owners will be promoted by a sale, before the court can properly decree a sale. This Court has held in a number of cases, that a sale of land in a partition *715 suit cannot be decreed, `unless it affirmatively appears in the record that partition cannot be conveniently made and that the interests of the parties entitled to such real estate will be promoted by a sale thereof', which is but the plain meaning of the statute. Herold v. Craig, 59 W.Va. 353, 53 S.E. 466; Casto v. Kintzel, 27 W.Va. 750; Roberts v. Coleman, 37 W.Va. 143, 16 S.E. 482; Stewart v. Tennant, 52 W.Va. 559, 44 S.E. 223; Smith v. Greene, 76 W.Va. 276, 85 S.E. 537." [82 W.Va. at 456, 457, 96 S.E. at 60]
In the 1931 revision of the West Virginia Code, this section was given its present chapter identification and the first sentence was altered by adding the italicized phrase: ". . . if the interests of one or more of those who are entitled to the subject, or its proceeds, will be promoted by sale . . ." [W.Va. Code, 37-4-3] The Legislature in addition added to the first sentence of this section the following clause: ". . . and the interests of the other persons so entitled will not be prejudiced thereby. . ."
The revisers' note to W.Va. Code, 37-4-3, gives the following explanation for the foregoing revisions:
"Section 3, c. 79, Code 1923, is modified to make it clear that the consent of all interested parties is not necessary to a sale in partition proceedings. There has heretofore been some doubt among the members of the profession upon this question."
While the revisers' note may be of only limited historical interest, it does not appear from the pre-1931 cases that this Court ever required the "consent" of all parties to a partition sale. Rather, the emphasis was on finding that the interests of all parties to the partition would be promoted by the sale. Garlow v. Murphy, 111 W.Va. 611, 163 S.E. 436 (1932); Brockman v. Hargrove, 103 W.Va. 254, 137 S.E. 11 (1927); Bracken v. Everett, 95 W.Va. 550, 121 S.E. 713 (1924); Eagle Land Company v. Jarrell, 94 W.Va. 564, 119 S.E. 556 (1923); Loudin v. Cunningham, supra.
It is obvious, however, that the 1931 revisions to W.Va. Code, 37-4-3, have resulted in two changes. First, there is no requirement that a person show that all the interests involved in the partition will be promoted. Second, it must be shown that the other interests will not be prejudiced by a partition by sale. Our cases demonstrate that after 1931, a party desiring to compel partition through sale is required to demonstrate that the property cannot be conveniently partitioned in kind, that the interests of one or more of the parties will be promoted by the sale, and that the interests of the other parties will not be prejudiced by the sale. Morrison v. Holcomb, 123 W.Va. 153, 14 S.E.2d 262, 265 (1941); Starcher v. United Fuel Gas Co., 113 W.Va. 397, 168 S.E. 383, 384 (1933).[3]
The question of what promotes or prejudices a party's interest when a partition through sale is sought must necessarily turn on the particular facts of each case. Here, the pleadings were in dispute on this issue, just as they were in dispute on several other issues which are a part of W.Va. Code, 37-4-1, et seq.
The question of whether partition in kind could be conveniently made was another issue raised in the pleadings. In the ordinary partition case, this question must be answered in the negative before a partition by sale can be ordered under the statute. Morrison v. Holcomb, supra; Garlow v. Murphy, supra.
Consolidated Gas points out, however, that where partition is sought of an oil and gas interest alone, this Court generally has held that partition in kind is not available and partition may be compelled only by way of sale. Hall v. Douglas, 104 W.Va. 286, 140 S.E. 4 (1927); Hall v. Vernon, 47 *716 W.Va. 295, 34 S.E. 764 (1899).[4] It therefore asserts that as a matter of law there was no factual issue on the question of the right to compel partition in kind.
Appellants argue, on the other hand, that while this may have been the general rule prior to 1939, in that year the Legislature amended W.Va. Code, 37-4-1, to clearly establish a right to partition in kind of mineral interests by adding the words "including minerals." As support for their position, they cite R. Donley, The Law of Coal, Oil and Gas in West Virginia and Virginia §§ 23, 24 (1951), where, at page 22, the following statement is made:
"As suggested in the preceding section, the statute, as amended in 1939, should be construed to require a partition of oil and gas, in kind, where the other essential elements are present."
Even prior to the 1939 statutory amendment, it was recognized that where partition in kind of the surface was appropriate, the oil and gas estate owned by the surface co-owners would follow the surface partition and co-tenants in the oil and gas who held no surface ownership would have their interest partitioned along with the division of the surface. As to co-owners in oil and gas only, the Court reasoned they obtained their interests from a grantor who owned both surface and oil and gas, and his severance of the latter interest to a stranger should not defeat the right of the other co-owners in the surface from obtaining a partition in kind. Morley v. Smith, 93 W.Va. 682, 118 S.E. 135 (1923).[5]
There can be little doubt that the 1939 amendment must be construed to permit partition in kind of oil and gas interests. By using the broad term "minerals" and excluding the right of lessees of oil and gas to partition in kind, it is obvious that the Legislature intended to include oil and gas interests within the term "minerals."
We need not determine whether partition in kind of the oil and gas is feasible in this case. We decide that as a result of the 1939 amendment to W.Va. Code, 37-4-1, there is a statutory right to have partition in kind considered. This is an issue of fact since if the property cannot feasibly be partitioned in kind it is only then partition by sale can be considered.
The rule in other jurisdictions as to the right to compel partition in kind varies, depending on their particular statutory language and whether the courts have held that oil and gas in place are interests in real property. A majority of jurisdictions hold that oil and gas are real property and may in appropriate circumstances be partitioned in kind. See 38 Am.Jur.2d Gas and Oil § 11; Annot., 173 A.L.R. 854 (1948); 2 H. Williams & C. Meyers Oil and Gas Law § 506.2 (1977 ed.), et seq.; 1 E. Kuntz, A *717 Treatise on the Law of Oil and Gas § 6.6, et seq. (a revision of Thornton, On Oil and Gas); 3 Summers, The Law of Oil and Gas § 535 (2nd ed. 1958), et seq.
We are aware that McMullen v. Blecker, 64 W.Va. 88, 60 S.E. 1093 (1908), holds that partition, either in kind or by sale, is not available where there is a subsisting lease on the property which permits the extraction of the minerals to exhaustion. The claim is made by appellants that such a lease exists in this case, although the lease is not made a part of the record.
We reject the absolutism of the McMullen case. In the first place, McMullen ignores the fundamental principle that partition is essentially governed by statute in this State. Our statutes governing partition recognize that if partition is obtained it is subject to any existing lease. W.Va. Code, 37-4-7.[6] The Virginia court construed an identical statutory provision as authorizing partition when there is a subsisting lease. Lucy v. Kelly, 117 Va. 318, 84 S.E. 661 (1915).
Certainly, the case of Blair v. Dickinson, 133 W.Va. 38, 54 S.E.2d 828, 848 (1949), suggests that partition of a mineral interest on which there is a subsisting lease is available by virtue of this statute. In several other cases this Court has discussed various aspects of the partitioning of oil and gas interests where there was a lease on such interest, and has not invoked the McMullen case as an absolute bar to partition. See McDonald v. Bennett, 108 W.Va. 665, 152 S.E. 533 (1930); Hall v. Douglas, supra.
Moreover, while McMullen based its holding on the general rule that a party seeking partition must have a possessory interest, relying on Merritt v. Hughes, 36 W.Va. 356, 15 S.E. 56 (1892), that case involved a remainderman's attempting to compel partition where there was a life estate in possession. The majority view is that a subsisting lease will not defeat the right of a co-owner to seek partition. See Annot., 151 A.L.R. 386 (1944); Annot., 171 A.L.R. 932, 946 (1947); 2 Tiffany, Real Property (3rd ed.) § 476; 68 C.J.S. Partition § 253.
We do not suggest that there may be no set of facts in a particular case which would preclude partition of a mineral interest where there is a subsisting lease. We do determine that McMullen cannot be read as requiring the denial of partition in every case in which there is a subsisting lease on the mineral interest sought to be partitioned. Here, there is no record of the terms of the lease and no factual basis on which to predicate a determinative rule other than the one announcedthat a subsisting lease on a mineral interest is not an absolute bar to partition.
One of the principal goals of partition is to promote the alienability of property which has come into divided ownership. The usual problem attendant to divided ownership is that the parties are unable to agree on a common plan for the utilization of the property and as a result nothing is done to benefit their interests. Partition also permits those co-owners who wish to obtain present realization of the value of their interest to do so. Our cases demonstrate that the right to partition is ultimately determined on the particular facts of each case. There may well be occasions when the facts are so clear and undisputed that a summary judgment is warranted, but such is not the case here.[7]
For the foregoing reasons, the summary judgment is reversed and the case is remanded.
Reversed and remanded.
NEELY, Justice, dissenting:
I dissent not to what the majority did by reversing the summary judgment in favor *718 of appellee, Consolidated Gas Supply Corporation, but to what the majority failed to do by not directing entry of a summary judgment in favor of appellants.
Partition by sale[1] is governed by W.Va. Code, 37-4-3 [1957] which provides:
When partition cannot be conveniently made, the entire subject may be allotted to any party or parties who will accept it, and pay therefor to the other party or parties such sum of money as his or their interest therein may entitle him or them to; or in any case in which partition cannot be conveniently made, if the interests of one or more of those who are entitled to the subject or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, and the interest of the other person or persons so entitled will not be prejudiced thereby, the court . . ., may order such sale or such sale and allotment, and make distribution of the proceeds of sale, according to the respective rights of those entitled . . .. [emphasis added]
I find it inconceivable that anyone could not perceive that a partition by sale would prejudice the appellants' interest and I am amazed that my colleagues are taken in by appellee's simple scheme. Appellee not only owns eleven-twentieths undivided interest in the oil and gas in question but also holds a lease granting it the exclusive right to remove the oil and gas. Cumulatively, appellants possess only a nine-twentieths interest in the oil and gas with no right of removal. The catch is that appellee, being the possessor of the exclusive right of removal, will be the only bidder at the sale and thus have the power to be judge in its own cause by setting the fair market value which, as a result, can be guaranteed to be very low. Appellee can in effect condemn the appellants' interest and proceed to adopt elaborate new production techniques without the need to permit appellants to share in the enhanced value of their property which new extraction techniques have made possible.
It would be the most obscene casuistry to argue that the appellants may bid for the oil and gas interest as well as the appellee at any partition sale. The market value of the oil and gas interest in this case is dictated exclusively by the appellee because only appellee has the right to extract the minerals. Accordingly, any rational bid by the appellants must be dictated by their estimation of the continued rate of production by the appellee. If the appellee purchases the land from the appellants, the appellee may use all of the modern techniques for extracting oil from old low-production wells; however, the appellants cannot in the same way predicate their bids on the expectation of these procedures being applied because the appellee can control absolutely the rate of exploitation and can deliberately frustrate any expectation appellants may have of receiving increased profits.
This is not a case about land; it is a case about a contract interest and nothing more. The appellants cannot enter upon the land, as they do not own the surface; they cannot exploit the oil and gas, as they have completely parted with that right. Therefore, they have no more interest in the land qua land than a stockholder of Consolidated Gas Supply has in the buildings used for the corporate headquarters. The purpose of the partition statute is to avoid involuntary joint ownership of land because of the chilling effect which collective ownership has on any owner's ability to exploit the property. Originally the concept of partition emerged as a solution to the problem of coparceners who inherited land from a common testator, but who may have hated each other.[2] If *719 the appellee could show any rational reason other than efforts for its own unjust enrichment for partition, I would agree with the majority. Unlike joint ownership of surface rights or even joint ownership of mineral rights where both parties have the right of extraction, there is no way by which appellants can interfere with appellee's full enjoyment of both their ownership and extraction rights unless it is to demand their fair share of the profits. Appellee's partition suit evinces only a type of private condemnation; it is as if a company could force a stockholder to sell a share of stock at a price completely dictated by the company forcing the sale.
This Court held long ago exactly in accord with this dissent in McMullen v. Blecker, 64 W.Va. 88, 60 S.E. 1093 (1908), a case which has never been overruled or even distinguished on any similar facts. In that case, the plaintiff possessed a ten-elevenths interest in a coal property and, as majority shareholder in a coal company, had through that company a lease to mine all the coal on the entire tract to exhaustion. The Court wisely perceived that the property sought to be partitioned had no market value whatsoever to anyone but the person seeking partition by sale and, consequently, denied partition. McMullen may be old law but it is good law and I, for one, am not anxious to eradicate good reasoning. In the present case, as in McMullen, partition by sale would only serve to make the fat goose fatter and to starve further the starving gander.
The appellants appear perfectly happy to sit quietly with their interest in these minerals and to take their chances that the appellee will extract them at a reasonable rate. They obviously expect that the appellee will ultimately apply new technology which will make their holdings more profitable, exactly the type of bet which is at the heart of the free market economy. They do not interfere with appellee's operation of the land, the very condition envisaged by the partition remedy; they merely reduce appellee's profit. Appellee may negotiate a sale of these mineral interests if it wishes, but it should not be permitted to condemn. How will the fair market value be ascertained in court? Who is the willing buyer? It would certainly not be I, because the appellee can totally deny me any revenue for years. Who would be the hypothetical willing seller? Not I either, because I would be unwilling to sell at any price which did not discount the potential for greater exploitation based on new technology, a fairly speculative question in the contemplation of the law of damages. Obviously, at any real sale, there will be but one bidder, and while appellants may be well enough capitalized to up the purchase price by bidding for the entire tract, should they win, they will in fact lose as the appellee may punish them for exercising their rights by declining to exploit any of the currently producing wells beyond the minimum necessary to maintain the lease.
An order for entry of a summary judgment in favor of appellants is the only proper disposition of this case. The reason is that by virtue of appellee's having purchased the exclusive right to remove the oil and gas, it has placed the appellants in a position where, under W.Va. Code, 37-4-3 [1957] the appellants must, in conformity with McMullen v. Blecker, supra, be prejudiced. The Court should have ended this litigation in this case rather than permitting the litigants to flog one another to an unavailing end. The type of decision rendered by the majority is none other than a sentence to slow death by due process!
NOTES
[1] As to the early common law, see Freeman, Cotenancy & Partition § 420 (2nd ed. 1886), which notes at § 421 that the first act broadening the right beyond estates of inheritance was that of 32 Hen. VIII, c. 32 (1540). See also 2 Tiffany, Real Property § 473 (3rd ed. 1939).
[2] The material part of W.Va. Code, 37-4-1, reads:

"Tenants in common, joint tenants and coparceners of real property, including minerals, and lessees of mineral rights other than lessees of oil and gas minerals, shall be compelled to make partition, and the circuit court of the county wherein the land or estate, or any part thereof, may be, shall have jurisdiction, in cases of partition, and in the exercise of such jurisdiction, may take cognizance of all questions of law affecting the legal title, that may arise in any proceedings."
[3] The later case of Stalnaker v. Stalnaker, 139 W.Va. 658, 80 S.E.2d 878, 883 (1954), fails to mention the requirement of showing no prejudice, but it is obvious that this was an oversight.
[4] Historically there was some question of whether the ownership of an oil and gas interest constituted an interest in real property and was therefore subject to any partition. Boggess v. Milam, 127 W.Va. 654, 34 S.E.2d 267 (1945), settled the question by holding that oil and gas in place are real estate and in effect overruled Wood County Petroleum Co. v. West Virginia Transportation Co., 28 W.Va. 210 (1886), which had held oil and gas, because of their fugacious nature, were not subject to absolute ownership until reduced to actual possession. Hall v. Vernon, 47 W.Va. 295, 34 S.E. 764 (1899), apparently first determined that partition in kind could not be made of oil and gas, but only a partition by way of sale.
[5] Admittedly the narrow holding of Morley rests on the fact that there was no showing that any oil and gas existed under the property. However, it appears that the rule formulated by the Court was that if a co-owner in the fee conveys his undivided interest to a third party in the underlying oil and gas, upon partition of the surface in kind his grantee of the oil and gas interest will be deemed to have his interest confined to the same surface area as his grantor:

"The oil and gas, under the law, follow the interests in the land from which they have been severed." [93 W.Va. at 686, 118 S.E. at 136]
We do not pass upon questions of the legal aspects of the joint ownership of real property, other than the limited partition areas herein discussed. See L. Brown, Some Aspects of Joint Ownership of Real Property in West Virginia, 63 W.Va.L.Rev. 207 (1961); R. Merricks, Joint Estates in West Virginia, 61 W.Va.L.Rev. 101 (1959).
[6] W.Va. Code, 37-4-7, states:

"Any person who, before the partition or sale, was lessee of any of the lands divided or sold, shall hold the same of him to whom such land is allotted or sold, on the same terms on which, by his lease, he held it before the partition."
[7] Another obvious factual issue arises by virtue of the 1957 amendments to W.Va. Code, 37-4-3, wherein the second paragraph was added to provide a mechanism for determining the value of the properly in the event of disagreement of the parties.
[1] I do not address the majority's discussion of the necessity to prove the infeasibility of partition in kind before partition by sale is permissible because partition in kind is not what appellee desires nor what appellants oppose. By eliminating the possibility of partition by sale, the controversy itself, in a legal sense, is eliminated.
[2] At common law, the courts did not have the power to sever joint estates in land where seisin had been voluntarily accepted; however, coparceners (namely involuntary cotenants deriving title from a common inheritance) had the right to demand partition by the writ de partitione faciendâ. It was not until the reign of Henry VIII that this right was extended to joint tenants, tenants in common, life tenants and other lesser estates. Stat. 31 Henry VIII, c. 1; Stat. 32 Henry VIII, c. 32. See generally, G. Thompson, Commentaries on the Modern Law of Real Property, Vol. 4, § 1822 (4th Ed. 1961); Halsbury's Laws of England, Vol. 24, §§ 742-751 (2d Ed. 1937).