607 S.E.2d 506

James L. LAURITA, Jr., Thomas
A. Laurita, and Toni D. Dering,
Plaintiffs Below, Appellees,

v.

ESTATE OF KENNETH FAY MORAN,
Sheila Rose Lightfoot, Personal Repre-
sentative of the Estate of Kenneth Fay
Moran, Sheila Rose Lightfoot, Tina Ma-
rie Fischer, Robert Dean Moran and
Paul Allen Moran, Defendants Below,
Appellants.

No. 31695.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 2004.

Decided Dec. 3, 2004.

Dissenting Opinion of Justice
Albright Dec. 7, 2004.

Robert L. Shuman, Esq., Reeder & Shuman, Morgantown, for Appellees.

Michael J. Aloi, Esq., Manchin & Aloi, Fairmont, for Appellants.

PER CURIAM:

This matter arises from a Marion County Circuit Court's final order adopting a Partition Commissioners' Recommendation as to how to divide approximately sixty-eight acres of land in Marion County. We affirm the circuit court's order.

I.

Prior to his death, Kenneth Fay Moran owned an undivided one-half interest in sixty-eight acres of land in Marion County. The appellees, James L. Laurita, Jr., Thomas A. Laurita, and Toni D. Dering ("the Lauritas"), owned the other undivided one-half interest.

Mr. Moran died intestate, and the appellants, the Estate of Kenneth Fay Moran, Sheila Rose Lightfoot, Personal Representative of the Estate of Kenneth Fay Moran, Sheila Rose Lightfoot, Tina Marie Fischer, Robert Dean Moran and Paul Allen Moran, Defendants Below ("the Morans"), became the new owners of Kenneth Fay Moran's undivided one-half interest in the property.

In June of 2001, the appellees filed a complaint in Marion County Circuit Court seeking to sell the property. In their complaint, the Lauritas argued that the contested property could not be partitioned in kind and sought to have the property sold pursuant to *W.Va.Code*, 37–4–3 [1957]. In their answer, the Morans denied that the property could not be partitioned in kind and asked that the complaint be dismissed or, in the alternative, that the circuit court appoint commissioners to appraise the fair market value of the property.

In August of 2001, the circuit court entered an order appointing three commissioners ("the commissioners"). The circuit court ordered the commissioners to determine first whether the property could be partitioned in kind. If the property could not be partitioned in kind, then the commissioners were to report to the circuit court the fair market value of the property.

On May 6, 2002, the commissioners held an evidentiary hearing. At the hearing, both parties presented evidence, including expert witness testimony. The parties stipulated to several facts, including the value of the surface per acre and the value of the marketable timber on the property.

Following the hearing, the parties submitted to the commissioners proposed findings of fact and conclusions of law. In November of 2002, the commissioners issued their recommendation to the circuit court. In their recommendation, the commissioners made several findings of fact and conclusions of law.

The commissioners found that the quantity and quality of the coal underlying the property was fairly uniform and that there were approximately 523,000 tons of coal underlying the property. More importantly, the commissioners found that both parties were equally prejudiced in their ownership of the property by a lack of any conditions on the property, or rights or easements associated with the ownership of the property, that would allow access to the coal under the surface of the property.

The commissioners found that there were four possible ways to partition the land: (1) a north-south division, with the Morans receiving the southern portion, (2) a north-south division, with the Lauritas receiving the southern portion, (3) an east-west division, with the Morans receiving the eastern portion; and (4) an east-west division, with the Lauritas receiving the eastern portion.

The commissioners found that the Lauritas owned and held title to the surface and coal estate of fifty-six acres of property located along the southern boundary of the property, and that the Lauritas were in the process of mining the coal on their adjacent property.

The commissioners chose option (2), recommending that the property be partitioned in kind, with a division line running east to west across the midpoint of the property, with the Morans receiving the northern parcel of the property and the Lauritas receiving the southern parcel. The commissioners reasoned that the north-south division was

fair and equitable because both parties would receive equal amounts of underground coal, and that the Lauritas should receive the southern portion of the property because this section was adjacent to the fifty-six acres of property independently owned by the Lauritas.

The commissioners also reasoned that any of the four possible partitions would place the Morans at an equal disadvantage, because, unlike the Lauritas, the Morans did not own any property that would give them access to coal under the property.

At a hearing in March of 2003, the circuit court allowed both parties to argue their objections to the commissioners' recommendations.

In June of 2003, the circuit court entered an order adopting the commissioners' recommendations. In adopting the recommendation, the circuit court found that the commissioners' findings were based upon the evidence and that the conclusions reached by the commissioners were both logical and appropriate.

The appellants appeal from the circuit court's order.

## II.

■ In Syllabus Point 4, *Henrie v. Johnson*, 28 W.Va. 190 (1886), this Court established the test for evaluating a commissioners' report in a partition suit:

> The report of commissioners in such suit is not final and may be set aside by the court. But when the court is asked to quash or set aside the report, on the ground that the commissioners erred in making their allotments, whereby an unequal partition has been made, it will not do so except in extreme cases—cases in which the partition is based on wrong principles, or it is shown by a very clear and decided preponderance of evidence, that the commissioners have made a grossly unequal allotment.

In their appeal, the Morans do not challenge the partition of the land in kind. They do argue that the commissioners' recommendation was flawed as a matter of law because the appellees were not entitled to a "preferential treatment" in being awarded the por-

tion adjacent to their independently owned fifty-six acres of land. The Morans argue that the right of a co-tenant to have the partition allotment from the contested property that is adjacent to the contestants independently owned land is not mandatory, and the commissioners erred as a matter of law in awarding the Lauritas the southern parcel of land. The Morans argue that the property should be divided into an eastern parcel and a western parcel.

■ The question before us is whether the Morans proved by a clear preponderance of the evidence that the recommended partition resulted in a grossly unequal division.

■ The applicable case law provides an initial presumption that a co-tenant is entitled to a partition portion adjacent to his or her independently-owned property. "An arbitrary allotment cannot be exacted by the cotenant. However, he is entitled to have his share allotted to him next to adjoining land which he may own, if this can be done without injury to the interests of his co-tenants." Syllabus Point 3, *Garlow v. Murphy*, 111 W.Va. 611, 163 S.E. 436 (1932). Such a presumption may be overcome by showing that the such a division would prejudice the interests of the other co-tenants. *Id.*

However, because neither party has access to the underlying coal on the property arising from the party's one-half undivided interest in the property, any partition will prejudice the Morans. Simply put, the recommended partition does not cause the appellants any additional injury or prejudice. Admittedly, this partition does confer a benefit on the Lauritas, who have access to the coal from their adjacent property. That benefit arises, however, not from a fair valuation of the Lauritas' interest in the subject property, but from their interest in their independently-owned adjacent property. And there is no requirement that this benefit, not deriving from the Lauritas' ownership in the subject property, be shared with the appellants in a partition suit.

Moreover, the east-west division proposed by the appellants would essentially force the Lauritas to partner with the appellants in the development of the coal estate, via the

Lauritas' adjacent property. A primary purpose of partition is to divide properties when people cannot agree on the property's management, not to coerce people into joint management of the property. The commissioners did not err in rejecting a "partnership" partition. The option chosen by the commissioners did not result in a grossly unequal allotment to warrant setting aside the commissioners' partition recommendation.

### III.

Therefore, we find that the circuit court did not err in adopting the partition commissioners' recommendation.

Affirmed.

Justice McGRAW dissents.

Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

ALBRIGHT, Justice, dissenting.

(Filed Dec. 7, 2004)

I dissent because the Partition Commissioners' report discloses on its face that the Commissioners disregarded the preeminent principles of partition law: fairness and equity. Specifically, the Commissioners acknowledged that their deliberations probably did not do justice: "Of course, receipt of that northern portion of the property [by Appellants] may not guarantee the same value the coal would have if situate closer to the active workings of the adjoining [Appellees'] Laurita tract." It is axiomatic that the law of partition in kind has as its objective the division of land in an equitable fashion "so as to do justice to all the parties as nearly as the subject will admit." *Henrie v. Johnson*, 28 W.Va. 190, 194 (1886). As the comment above quoted from the Commissioners' report makes clear, that principle was simply ignored in this case.

Appellees own coal lands adjoining the tract partitioned in this case. Our case law established long ago that in a partition in kind, Appellees are entitled to be awarded a

portion of the partitioned tract adjoining their other land "if this can be done without injury to the interests of" Appellants. *Garlow v. Murphy*, 111 W.Va. 611, 614, 163 S.E. 436, 438 (1932).

The first problem with the decision below is that by rejecting Appellees' request for an east/west partition and insisting on a north/south partition, the Commissioners missed the chance to both fulfill the historic preference for causing a portion of the partitioned land to adjoin Appellants' other land and the chance of minimizing any injury to the interests of Appellants arising from the partition.

Appellants correctly argue that the decision to divide the subject parcels in a north/south fashion and the allotment to Appellants of the northern section of the property results in depriving them of good access to whatever mineable coal underlies the property. Appellees own a fifty-seven acre parcel contiguous to the southern parcel of the partitioned property awarded to Appellees. Through this manner of effecting partition, Appellants have been placed at a specific disadvantage with regard to extracting the valuable minerals underlying their parcel of property given their lack of attainable access to the coal.[1]

While Appellees dispute that Appellants are in worse shape than they are with regard to gaining access to the coal in place, the facts of this case suggest otherwise. Appellees argue that their only right of surface access to the southern portion of the parcel has been extinguished due to the termination of a lease agreement under which they previously had such access. However, the fact that they own the adjacent parcel of property certainly suggests that they are in a superior bargaining position to obtain the easements or rights of way necessary for development of the coal estate. Lacking that same bargaining position, Appellants will now be forced to enter into some sort of an agreement with Appellees to effectuate removal of any extracted coal from their portion of the

---

1. In its findings, the Partition Commissioners concluded that: "The coal estate of the Subject Property does not have any easements or rights of way incidental or appurtenant to access the coal." The Commissioners further determined that "[t]he coal estate ... is not capable of being developed by either the Lauritas or the Moran Heirs without the acquisition of an easement or right of way for the purpose of accessing and developing such coal estate."

parcel or forego the exploration and development of the northern parcel assigned to them. Consequently, the effect of the north/south partition, given Appellees' ownership of an adjacent parcel of property, is to effectively reduce the bargaining power of Appellants with regard to mining the coal underlying their share of the parcel. By leaving Appellants in this uneven bargaining position, the partition effected by the lower court's ruling runs afoul of the desired objectives of this state's partitioning statutes not to prejudice the interests of one party while promoting the specific interests of another. *See* W.Va. Code § 37-4-3 (1957) (Repl.Vol.1997).

As previously noted, the Partition Commissioners bluntly acknowledged the resulting inequity inherent to the partition selection they made. The Commissioners shrugged off responsibility for achieving a fair and just result by reasoning that "the purpose of our review for partition is not to maximize or minimize the value of a cotenant's share but to recommend an equitable division of the property." However, the fact is that the approach taken by the Commissioners, and adopted by the circuit court, does not achieve a fair and equitable division of the land and mineral rights at issue. *See* Syl. Pt. 4, *Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782, 247 S.E.2d 712 (1978) (recognizing that statutory right to partition in kind exists where mineral rights are involved).

In ascertaining the value of coal property appearing to have essentially equal quantity and quality of coal underlying the surface, there remains at least two other major factors which contribute to an overall assessment of the value of that coal: mineability and accessibility. It appears from the record that the Commissioners failed completely in their obligation to assess the impact on mineability and accessibility arising from their decision to divide the property in a north/south manner. Likewise, it appears likely that the decision to award only the northern portion of the tract to Appellants resulted in Appellants receiving coal lands substantially reduced in value because of the lack of accessibility for mining. Appellants only recourse appears to be subsequent negotiations with Appellees. In short, Appellants likely got some "home cooking" in this deal and it was neither fair, equitable, nor necessary.

Given the inherent inequitable result of the partitioning decision at issue when value is examined in terms not limited to acreage, and particularly the announced intention of the Commissioners to disregard the disadvantage to which Appellants have been put with regard to accessing and removing their coal, I must respectfully dissent from this Court's decision. I consider that the majority did not intend the resulting injustice; the majority simply failed to recognize and rectify that injustice.