Ronald SCHROPP and Suzanne
Schropp, Appellees,

v.

Michael SOLZMAN and David
Solzman, Appellants.

No. 65122.

Supreme Court of Iowa.

Jan. 20, 1982.

Scott H. Hughes and Kenneth Sacks of
Perkins, Sacks & Hannan, Council Bluffs,
for appellants.

John H. Bernstein of Higgins & Okun, Omaha, Neb., and G. William Smits of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellees.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and SCHULTZ, JJ.

HARRIS, Justice.

Plaintiffs recovered from adjoining landowners for water and mud damage to their residence property. Defendants appeal, asserting that neither the facts nor the law support the judgment. We affirm the trial court.

Plaintiffs owned their property for about twenty years and lived in the neighborhood prior to that time. Defendants' property, described as a "natural habitat," lies in the same residential neighborhood in Council Bluffs. Plaintiffs' property is servient to defendants'. Defendants are absentees who acquired their unimproved twelve-acre tract in 1960. The property had previously been in their family for many years. A farmstead burned soon after defendants acquired the tract and it has been vacant since. Defendants did not maintain, landscape, or excavate their property in any manner prior to the occurrence giving rise to this suit.

Certain diversion banks, called berms, were constructed on defendants' property to control the flow of surface water. The water was thereby directed along a path which led to a public roadway. These banks have been in place at least ten years, perhaps as much as twenty years.

Because of its natural and apparently abandoned state, defendants' property became a haunt for motorcycles and, less occasionally, four-wheel drive vehicles. This use, dating back some ten years, was made known to defendants who were also told that these vehicles were damaging the property. Defendant Michael Solzman demonstrated this knowledge when he wrote a letter to a captain of the Council Bluffs police department. The letter, dated March 26, 1974, told of the motorcycle prob-

lem and said Solzman was having his property posted with no trespassing signs at the major entrances. He failed to do so and took no other steps to alleviate the motorcycle problem.

Solzman was told on at least two other occasions by another neighbor that the problem continued. Defendants' only visit to the property after 1974 was in July of 1978 at the request of plaintiffs after the property was damaged.

After a particularly rainy period in June and July, 1978, a large amount of water and mud flowed onto plaintiffs' property, causing extensive damage. Plaintiffs then called Altaf Rahman, Ph.D., a specialist in soils and foundations, to inspect the property. Dr. Rahman's findings were adopted by the trial court. There was erosion of surface water channels throughout defendants' property. Water channels and the berms had worn down. They had been long neglected. The vehicular traffic had destroyed the grass growth on top of the embankments and had worn and torn the embankments themselves. The amount of damages resulting from the water and mud is not disputed.

Although the defendants list a number of assignments, we think two questions control the disposition of this appeal. Were the trial court's findings of fact supported by substantial evidence? Were defendants under a duty to plaintiffs to take reasonable measures to maintain and repair the artificial embankments and dikes?

I. Taking the evidence in the light most consistent with the trial court's judgment there was substantial evidence to support the trial court's findings. *See* Iowa R.App.P. 14(f)(1). The trial court's finding that defendants knew or should have known the condition of their property was supported by evidence that they were informed in 1974 that motorcycles were trespassing on and damaging the property. The trial court's finding on the question of causation was supported by evidence that prior to 1978 both properties possessed satisfactory drainage systems; at no time prior to 1978 did water from defendants' prop-

erty drain onto plaintiffs' property. Notwithstanding knowledge that the motorcycles were trespassing the defendants failed to take measures to stop the activity. The berms on defendants' property broke down as a result of the trespassing.

II. Defendants say the trial court erred in finding they were under a duty to inspect their property. They cite *Kozloski v. Modern Litho, Inc.*, 182 Neb. 270, 154 N.W.2d 460, 463 (1967). A better characterization of the trial court's holding would be that the defendants owed a duty to plaintiffs to take reasonable measures to maintain artificial conditions on their property and that, in the light of facts within their knowledge, inspection was one such reasonable measure. *Kozloski* held a landowner is under no independent duty to inspect property *in the absence of knowledge* suggesting an inspection. This seems to be consistent with the standard which the trial court here applied to defendants. Since defendants knew that motorcycle traffic was damaging their property it seems only reasonable that they should have inspected it to assess the situation and thereafter correct the damaged embankment. The trial court did not err in making this finding.

III. Defendants strongly urge that the trial court erred in presuming they knew the conditions on their land. They rely heavily on *Spiker v. Eikenberry*, 135 Iowa 79, 110 N.W. 457 (1907), in which we reversed a trial court's decree enjoining Eikenberry "from using said premises [a vacant lot in Chariton] or knowingly permitting the use thereof by others for the playing of baseball or other games of ball wherein the ball is thrown or batted." Defendants believe *Spiker* supports their contention that they hold no duty to maintain the artificial conditions against damage done by trespassers. Their reliance is misplaced. In *Spiker* we pointed out:

> We have not here a case where the nuisance complained of is the condition of defendant's property interfering with the comfortable enjoyment of adjoining premises. Undoubtedly the owner of property may be required to keep it in such condition as not to unreasonably interfere with the safety and comfort of those occupying the adjoining premises. [Authorities.]

135 Iowa at 82, 110 N.W. at 458. The artificial conditions here existed for a number of years. Had defendants exercised reasonable care they would have known of it.

The trial court applied a rule explained in Iowa Uniform Jury Instruction No. 22.1. The instruction, in turn, is supported by our holdings in *Weidenhaft v. Shoppers Fair of Des Moines, Inc.*, 165 N.W.2d 756, 759 (Iowa 1969); *Ling v. Hosts Incorporated*, 164 N.W.2d 123, 126 (Iowa 1969). The rule is stated:

> Where the condition on the premises is created by persons for whom the possessor is not responsible, or by events over which the possessor has no control, it must be established that he had actual knowledge thereof or that the condition existed for such length of time that in the exercise of reasonable care he should have known of it.

The plaintiffs' theory of liability is supported by the Restatement (Second) of Torts, §§ 364, 365, 366 (1966). Section 366 provides:

> One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,
>
> (a) the possessor knows or should know of the condition, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it.

The Restatement standard was applied in *Dye v. Burdick*, 262 Ark. 124, 553 S.W.2d 833 (1977).

IV. Finally defendants argue that, in the light of the relative burdens borne by

the plaintiffs and defendants, the trial court erred in finding liability. They believe that liability should be assessed only if the probability and gravity of plaintiffs' injury, considered together, outweigh the burden placed upon the defendants. This assignment is really a challenge to the established rule as stated in the Restatement. We adhere to the Restatement view. We note too that the record supports the trial court's finding of a *complete absence* of corrective measures or maintenance in an attempt to repair or alleviate the conditions.

■ We have not overlooked an additional assignment which challenges a trial court ruling excluding testimony of a witness who would have testified about the difficulty and futility he experienced in attempting to keep motorcycles from trespassing on vacant property. The ruling on the admissiblity of that evidence fell well within the trial court's discretion. *See Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 288 (Iowa 1979).

The trial court's findings were supported by substantial evidence. The defendants' assignments are without merit.

AFFIRMED.