329 S.E.2d 102

**Dorothy R. LOWERY, Elizabeth R. Ragan and Helen R. Popa**

v.

**Andrew A. RAPTIS, Jr.**

**No. 16255.**

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1985.

Decided April 12, 1985.

James M. Cagle, Charleston, for appellees.

Chauncey H. Browning, Charleston, for appellant.

PER CURIAM:

This is an appeal by Andrew A. Raptis, defendant below, from an order entered July 27, 1983, in the Circuit Court of Kanawha County, granting the plaintiff's motion for partial summary judgment. Finding that there was a genuine issue of material fact and that the plaintiff was not entitled to judgment as a matter of law, we reverse.

The parties in this action are siblings, male and female, the children of Andrew, Sr. and Elizabeth Raptis. Andrew, Sr. died in 1963. In 1978 and 1980, Elizabeth conveyed to her five children one-half interest in tracts of real property, known as the "Goodrich" property, near the intersection of Washington and Laidley Streets in Charleston. The conveyances were part of a plan to sell the property to St. Francis Hospital through a lease-purchase agreement. Elizabeth, her daughters and their husbands all appointed Andrew, Jr. (appellant), a Charleston lawyer, as their attorney-in-fact. The power of attorney they executed, granted the appellant the following authority:

1. KNOW ALL MEN BY THESE PRESENTS, that we, the undersigned affiants, for and in return for the payment to us of the sum of Ten Dollars ($10.00) in cash and other good and valuable considerations not herein described, the receipt and legal sufficiency of all of which are hereby acknowledged, do by these presents make, constitute and appoint Andrew A. Raptis, Jr. our true and lawful Attorney-in-Fact for use in our place and stead and on our behalf,

(a) With respect to the following properties those described in W.Va. Kanawha Co. Comm. DB # 725–201, 726–317 # 1389–742 & DB # 1892–227.

–1. To demand, sue for, collect, receive and receipt for all sums of money or payments due or to become due to us, and to deposit in our names in our bank or banks any and all monies collected or received by us; to draw checks on these or other bank accounts in our names and to endorse checks, notes, drafts or other negotiable paper in our names or for our benefit;

–2. To borrow money in our names and on our behalf and to execute, acknowledge and deliver proper instruments to secure the payment thereof;

–3. To begin, prosecute and carry on to completion any action, suit or other legal proceeding in our names; and in his discretion to compromise, refer to arbitration or otherwise terminate such litigation;

–4. To execute, acknowledge and deliver in our names deeds of grant and conveyance to real and personal property owned by us or standing in our names or in our behalf; and

–5. In all other respects to act for us and in our place and stead with respect to the foregoing matters as fully as we could do if personally present.

2. It is agreed that this Power of Attorney may be revoked or cancelled only by the agreement of all parties hereto expressed in a written instrument of equal dignity hereto.

3. We hereby fully ratify and confirm all that our said Attorney-in-Fact shall lawfully do or cause to be done by virtue hereof.

Two tracts were subsequently sold to St. Francis Hospital. Proceeds due to the Raptis children from the first sale, on December 29, 1980, amounting to $99,500, were collected by the appellant pursuant to the power of attorney. After deducting expenses the balance was distributed in equal shares to the five siblings.

The second sale took place on December 1, 1981. The sale price was $107,060.08. After deduction of expenses, the share of profit due to each equalled $18,925.94. On March 27, 1982, the appellant sent checks to his four sisters in the amount of $1,925.94, and corporate notes from Sterling Restaurant, Inc. were issued in the amount of $17,000, payable 18 months from December 1, 1981.

Sterling Restaurant, Inc. was a family owned corporation which operated the Sterling Restaurant in downtown Charleston. Elizabeth Raptis and her five children were

the only shareholders. Elizabeth was the secretary, and the appellant served as president.

About six months later, three of the Raptis sisters filed a complaint against their brother, alleging that the appellant had breached his fiduciary responsibility by withholding and failing to account for the funds he received, under the power of attorney, as proceeds from the sale of property.[1]

The appellant answered, denying most of the allegations, while admitting that he did act under the power of attorney. He further asserted that an accounting had been made.

On November 11, 1982, the appellant's deposition was taken. The appellant's explanation for giving notes rather than money is contained in the following dialogue, excerpted from the deposition:

Q. And you gave them a note for the balance, is that right?

A. Well, the Sterling Restaurant gave them a note for the balance.

Q. How is it that the Sterling Restaurant gave them a note when the Sterling Restaurant didn't own the property and didn't have anything to do with this transaction, at least based on legal title?

A. Well, it was my mother's desire, that the restaurant was in dire straits and had to have some cash, and she requested that the money be given to the restaurant and that each one of us be given a note for that amount, seventeen-thousand dollars.

Q. So that the restaurant received seventeen-thousand dollars from each of the individuals who had a one fifth ownership in that property, is that right?

A. Right; yes.

. . . .

Q. Do you have anything in writing from any of your sisters that would take the form of an agreement or contract of any kind to permit you to pay the seventeen thousand dollar interest over to the corporate entity of Sterling Restaurant, Inc.?

A. No, other than the fact that my mother had discussed it with them by telephone and she had told them what her plans were.

Q. Did she discuss it with each of the plaintiffs in this case?

A. Oh, yes. Yes.

Q. Were you privy to the discussion that took place?

A. No. It was mostly on the phone. But they all agreed to it.

Q. Do you have anything that has the signature of any of the sisters that agrees to this payment of the $17,000.

A. No.

. . . .

Q. Did you prepare the note?

A. Yes.

Q. And did you sign the note as president of the corporation?

A. Yes.

Q. So that I understand clearly, because I recognize this is an action against brother by sisters who in fact love you very much as their brother. So that there is no misunderstanding there, that is the justification for the corporate entity, Sterling Restaurant, Inc., signing a note for payments due under a power of attorney that was in your name personally? What justification do you offer for that? . . .

A. To show that the restaurant now owed the girls $17,000. Instead of receiving the $17,000 in their own right they loaned it to the restaurant. And, of course, the restaurant gave them a note.

Q. But there is no documentation with a signature, I take it, which assents to a loan of $17,000 to the corporate entity, Sterling Restaurant, Inc., is there? . . .

---

1. A second count in the complaint, alleging breach of fiduciary responsibility as president of Sterling Restaurant, Inc. was not adjudicated by means of the summary judgment and is therefore not a subject for our review.

A. No, I stated that before, that it was by telephone. Mother had talked to them all.

(Raptis deposition at 35–44).

One of the plaintiffs, Dorothy R. Lowery, filed a motion for summary judgment, pursuant to Rule 56, West Virginia Rules of Civil Procedure.[2] Her accompanying affidavit stated that her brother owed her $17,000, plus interest, under his power of attorney; that she had at no time authorized the payment of the money owed her to any person, entity, corporation, or business; and, more particularly, that she had at no time authorized her brother to transfer money to Sterling Restaurant, Inc.

The appellant filed a counter affidavit in which he asserted that the power of attorney, executed by the plaintiff, authorized his actions; that he owed no money to the plaintiff; that a full accounting had been made; that he and all his sisters had agreed to loan to the restaurant their portion of the proceeds of the sale; that notes were delivered to all the sisters, including plaintiff Dorothy R. Lowery; that Lowery's husband had been employed as manager of the restaurant at the time of the loan but had subsequently been fired; that after Mr. Lowery's termination, the plaintiff commenced the action to recover the money; that the plaintiff did not agree in writing to authorize transfer of the $17,000 to the restaurant, but that she accepted the note in lieu of payment until her husband was fired.

The motion for summary judgment was submitted for decision upon the pleadings, affidavits, defendant's deposition and exhibits. After reviewing the record, the trial court granted the motion, finding that the defendant received money under the power of attorney; that he had not paid the money to the plaintiff; that there was no genuine issue of material fact; and that the plaintiff was entitled to judgment as a matter of law.

■ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ When an order granting summary judgment is appealed to this Court, we view the facts in the light most favorable to the losing party, *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433, 435 (1980); *Board of Education of Ohio County v. Van Buren and Firestone, Architects, Inc.*, 165 W.Va. 140, 267 S.E.2d 440, 442 (1980); and the losing party is entitled to every reasonable inference which can be drawn from the pertinent facts and circumstances. *Burns v. Cities Service Co.*, 158 W.Va. 1059, 1065, 217 S.E.2d 56, 59 (1975).

■ "A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. pt. 6, *Aetna Casualty & Insurance Co. v. Federal Insurance Co.*, *supra*.

■ Our review of the record reveals the existence of a genuine issue of material fact. The appellee contends that her affidavit unequivocally denies any agreement authorizing the appellant to lend her money to the Sterling Restaurant or to substitute a corporate note for payment of $17,000 share from the sale of the Goodrich property.

The power of attorney executed by the appellee did establish a fiduciary relationship between the parties. *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979). There is no dispute that it was the appellant's responsibility to collect the proceeds of the sale and pay to the appellee her share of such proceeds.

The pleadings, affidavits, depositions and exhibits, when construed in the light most favorable to the appellant, give rise to an

2. Ms. Lowery also filed a motion to amend the complaint to reflect the fact that her two sisters were no longer plaintiffs in the action. Lowery's amended complaint also added to Counts 1 and 2 an allegation that the defendant's actions were wilfull, wanton, and reckless.

inference that the appellee agreed to accept the note in payment of the $17,000 owed to her by the appellant. The existence of such an agreement would serve as a defense to the action. *See Hobbs Lumber Co. v. Robinson,* 151 W.Va. 954, 157 S.E.2d 897 (1967). The absence or existence of such an agreement is thus a genuine issue of material fact, and the appellee did not, through her pleadings and affidavit, establish her entitlement to the judgment as a matter of law. Therefore, the circuit court erred in granting the motion for summary judgment.

Our reversal of the judgment renders unnecessary the consideration of appellant's other assignments of error.

Accordingly, the order of the circuit court is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.