355 S.E.2d 53

Hazel E. PERRINE, William J. Perrine, William J. Perrine, Jr., Sandra Perrine, and Mary Katherine Perrine

v.

MERT DEVELOPMENT, INC., a Corporation, Continental Reserves 1981–D December, a Foreign Limited Partnership, Richard R. Carr, Edwin A. Humeston, III, Continental Reserves, Inc., a Foreign Corporation, and Unknown Defendants.

No. 16927.

Supreme Court of Appeals of West Virginia.

March 12, 1987.

Carl D. Andrews, Alicia J. Clegg, Bowles, McDavid, Graff & Love, Charleston, Richard H. Brumbaugh, Spencer, for appellants.

Thomas C. Evans, III, Spencer, for appellees.

PER CURIAM:

This is an appeal by Mert Development, Inc., and others, from a summary judgment order entered by the Circuit Court of Roane County on February 6, 1985. That order, in effect, held that a certain oil and gas lease entered into by Hazel E. Perrine and the other appellees had expired and was of no legal effect. On appeal the appellants contend that there were substantial issues of material fact pending at the time of the entry of the summary judgment order and that summary judgment was improper. We agree, and we reverse the decision of the Circuit Court of Roane County.

The record in this case shows that on or about August 22, 1979, Hazel E. Perrine, and others, who were the owners of a 283-acre tract of land in Roane County, executed and delivered an oil and gas lease to Mert Development, Inc., which granted Mert Development the exclusive right to drill for, produce and market oil and gas from the 283-acre tract.

The lease contained the relatively standard clause providing that it would remain in force for a primary term of two years and for "as long thereafter as operations for oil or gas are being conducted on the premises, or oil or gas is found in paying quantities thereon, or any formation underlying the ... leased land is used for storage of gas ..." There was also a provision for the payment of shut-in royalties if gas was found, but through lack of market was not sold.

In May, 1980, during the primary term of the lease, Mert Development commenced drilling operations on the leased premises. Those operations, which produced neither oil nor gas, were completed on May 9, 1980. However, Mert Development, believing that the property was promising, requested that the appellees extend the primary term, and on August 21, 1981, the appellees, by an "extension of lease", acceded to Mert's request and agreed to extend the original lease with slight modifications for an additional six months after August 22, 1981.

During the six-month extension, Mert Development deepened the original well to 5,900 feet, and according to Mert, its employees, during the deepening operations, detected the presence of natural gas in sufficient quantities to merit the completion of the well. The drilling operations connected with the deepening process were completed on December 19, 1981, prior to the expiration of the six-month extension of the primary term of the lease.

According to Mert, work was suspended at the end of December, 1981, due to weather conditions. However, it was resumed in April, 1982, and efforts were made to complete the well for production. Additionally, certain documents were filed and agreements were negotiated so that the well could be placed into production.

On or about August 22, 1983, the appellees, by their attorney, notified Mert Development that they considered the lease to have expired by its own terms on February 22, 1982, and also notified the company that an action would be instituted to have

the lease cancelled. After receiving the letter Mert Development, on September 8, 1983, tendered to William J. Perrine, agent for the appellees, the sum of $100.00, representing the shut-in royalties specified in the 1979 lease. Mr. Perrine refused to accept the check and returned it. Mert Development also notified the appellees that, given current market conditions, it considered the lease to be in full force and effect and that it had no intention of abandoning the leasehold estate. Subsequently, Mert Development again attempted to tender shut-in royalty payments, but the subsequent payment was also refused.

On or about January 20, 1984, the appellees instituted the present action for the cancellation of the lease. In response to the appellees' complaint, Mert Development and the other appellants asserted that they had complied with the terms of the original lease and the extension of it and that they had drilled a well and had conducted diligent operations for the purpose of preparing the well for production. They indicated that shut in royalty payments had been tendered, and claimed that the appellees were estopped from bringing suit since the appellees had permitted them to conduct drilling and completion operations without protesting.

Subsequently, various discovery proceedings were conducted in the case. Responses were made to requests for admissions, interrogatories, and requests for the production of documents. Then, on May 11, 1984, the appellees filed a motion for summary judgment, contending that there was no genuine issue of material fact in the case and that as a matter of law the court should declare the 1979 lease and 1981 extension of it forfeited and cancelled. Mert Development and the other appellants opposed the motion. All parties later briefed the issues involved.

After taking the issues under advisement, the Circuit Court, by order entered February 6, 1985, granted the motion for summary judgment. Mert Development subsequently filed a motion for reconsideration, and the circuit court denied that motion of March 25, 1985.

In syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court announced a rule concerning summary judgment which has since been consistently followed: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See Lowery v. Raptis*, 174 W.Va. 736, 329 S.E.2d 102 (1985); *Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978); *Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971).

Furthermore, in applying this rule it is incumbent upon a trial court to view the facts in the case in a light most favorable to the party against whom judgment is to be rendered. *Board of Education v. Van-Buren and Firestone Architects, Inc.*, 165 W.Va. 140, 267 S.E.2d 440 (1980).

In *Berry Energy Consultants v. Bennett*, 175 W.Va. 92, 331 S.E.2d 823 (1985), this Court considered circumstances which would extend the ordinary oil and gas lease and, in syllabus point 1, concluded that:

"The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property." Syl. pt. 4, *Eastern Oil Co. v. Coulehan*, 65 W.Va. 531, 64 S.E. 836 (1909).

In *South Penn Oil Company v. Snodgrass*, 71 W.Va. 438, 76 S.E. 961 (1912), the Court indicated that abandonment or failure to produce oil and gas sufficient to destroy the vested estate created by discovery of oil or gas under a lease will not be found so long as the lessee diligently and efficiently operates the leased premis-

es to produce the oil and gas located thereon.

There have been a number of cases indicating that short-term cessations of development and production are not sufficient to terminate a lease. For instance, in *South Penn Oil Company v. Snodgrass, supra,* oil was discovered six days before the expiration of the lease, and the well was shot on the last day of the term. Pumping of the well did not commence until eight or nine days after the expiration of the term. Thereafter the well was pumped once a week for a considerable period of time. The Court in that case found that the various instances of cessation of activity did not amount to an abandonment of the lease. Similarly, in *Eastern Oil Company v. Coulehan, supra,* a well was not commenced until the last quarter of the lease. On July 20, 1906, gas was found and tests showed that the well had capacity to produce in large quantities. Drilling to deeper depths was delayed because of a shortage of water and interference of the lessor. The Court indicated that whether the lease is terminated hinges upon whether the lessee neglected to pursue the work of production and further development or whether the delay was caused by some reasonable circumstance.

More recently in *McCullough Oil, Inc. v. Rezek,* 176 W.Va. 638, 346 S.E.2d 788 (1986), the Court discussed the "temporary" cessation of production doctrine and indicated that in the absence of a cessation of production clause, factors to be considered in determining whether a cessation of production of "temporary" so as to preclude the termination of the lease include the length of time without production, the cause of the delay, and whether the lessee exercised reasonable diligence to resume production. Where there is a cessation of production clause, the lease automatically terminates at the end of the "grace period" provided by such clause, unless production or operations are resumed within the grace period.

In the documents filed in the present case, Mert Development, and the other appellants, take the position that they did discover gas in significant quantities and that they did diligently pursue operations to produce the gas. They aver that throughout 1982 they engaged in many activities necessary to complete the well, that they, among other things, prepared the well for fracturing, that they performed perforation depth control logs, that the well was perforated and fractured, that filings were made with the Federal Energy Regulatory Commission to obtain a pricing for the gas, that tests were run on the well, that a gas purchase contract was negotiated and that rights of way necessary for a pipeline were negotiated.

In opposition to Mert Development's contention that the summary judgment was improper, the appellees argue that assertions regarding Mert's diligence in completing the well are not supported by the records. For instance, at one point the appellees argue:

Nothing in the record of this case, that is the evidence presented in the form of affidavits or discovery responses in opposition to the Summary Judgment motion, specifically lays the basis for an inference that the appellants were on the Perrine farm after July, 1982, whether for the purposes of testing of the well during the Fall of 1982, as suggested on page 7 of the appellants' brief, or otherwise.

A careful examination of the record presently before the Court indicates that prior to the entry of the summary judgment order in the case by the Circuit Court of Roane County on March 25, 1985, Mert Development filed responses to interrogatories submitted by the appellees, and that in those responses Mert Development suggested that following the drilling of the Perrine well it had performed a number of services or had paid for the performance of a number of services necessary for the production of gas from the well in question. Attached to the responses were multiple exhibits supporting Mert's contentions.[1]

After examining the record, this Court is of the opinion that the documents sub-

---

1. The documents filed indicate that Mert Development, among other things, took the following

actions, among others, to complete the well:

mitted by Mert Development suggest that it did do acts which might have been necessary for the production of gas from the well and might have prevented termination of the lease, and that it has, at least, raised genuine issues of fact which, in this Court's opinion, must be fully developed by trial before it can be determined whether Mert acted diligently and in good faith to produce gas from the leased premises and whether by its action it prevented termination of the lease.

Because there are genuine questions of fact in the case which requires further development, this Court believes that the circuit court erred in rendering summary judgment against Mert Development and the other appellants.

Therefore, the judgment of the Circuit Court of Roane County is reversed, and this case is remanded for further development.

Reversed and remanded.

1. On May 9, 1980, it had the well logged by Schlumberger Well Services;

2. Before February 27, 1982, it arranged with the West Virginia Department of Mines for certain "FERC filings" which were necessary to sell the gas from the well;

3. It obtained a "Consent and Easement" from Hazel E. Perrine for the operation of the well, a document which was filed with the Department of Mines on August 3, 1981;

4. On August 28, 1981, it was informed by the Oil and Gas Conservation Commission that required documents had been filed, and that permission was granted for completion of the well;

5. Before December 30, 1981, it arranged for the hauling of casing to the well;

6. Between April 15, 1982, and August 2, 1982, extensive work was done on the well site and the well by Tally Well Services;

7. In July, 1982, it procured a gas pipeline right-of-way from Charles Hardman, and it worked on procuring a gas-purchase contract.