387 S.E.2d 296

Nettie **MILLER**

v.

**MONTGOMERY INVESTMENTS, INC.; Woodland Realty Company; J.W. Riccardi, d/b/a Riccardi & Ramsey; and Walter Ramsey, d/b/a Riccardi & Ramsey.**

No. 18956.

Supreme Court of Appeals of West Virginia.

Nov. 16, 1989.

John McFerrin, Charleston and Susan Dalporto, Hamlin, for Nettie Miller.

John E. Lutz and J.W. Riccardi, Charleston, for Montgomery Investments, Inc., Woodland Realty Co., and J.W. Riccardi.

BROTHERTON, Chief Justice:

A landslide, which originated on property owned by Montgomery Investments, Inc., destroyed the appellant, Nettie Miller's house. The appellant sue for damages. Montgomery Investments, Inc., and the other defendants moved for summary judgment, and on March 16, 1988, the Circuit Court of Fayette County granted the motion. On appeal, the appellant claims that the circuit court erred in granting summary judgment and in not holding Montgomery Investments, Inc., liable as a matter of law. After reviewing the record, this Court believes that the circuit court did err in granting summary judgment, but the Court cannot conclude that the circuit court erred in failing to hold Montgomery Investments, Inc., liable as a matter of law.

Montgomery Investments, Inc., owned a twenty-two-acre parcel of property located on a hill above the appellant's house. Before Montgomery Investments, Inc., acquired the property, a portion of the coal on it had been mined. As a result of the mining operations there was a network of mine tunnels and works beneath the property. An old mine portal from one of these abandoned works was located on the property. Mining operations had ceased by the time Montgomery Investments, Inc., acquired the property, and it conducted no mining activities.

On July 2, 1986, during a period of extraordinarily heavy rainfall, a landslide occurred which destroyed the appellant's home. A portion of the soil crack which was associated with the landslide was located on the Montgomery Investments property. The crack developed because the hillside became saturated with water.

According to an investigation conducted by the Office of Surface Mining, during normal rainfall water in the area drained underground along bedrock and discharged into a stream which flowed into the Kanawha River. The extraordinary rainfall of July 2, 1986, created extra surface water run-off and also increased the underground flow of mine water. The underground flow followed fractures and joints in bedrock beneath the surface and exited to the surface at the slide area. The water flow saturated the hillside, destabilized it, and caused the landslide.

In the fall of 1986, after the landslide, all the assets of Montgomery Investments, Inc., and Woodland Realty Company, its parent company, were distributed to Riccardi & Ramsey, a partnership.

Following the landslide, the appellant instituted a civil action against Montgomery Investments, Inc., for the damages resulting from the landslide. The appellant also joined as defendants Woodland Realty Company, and J. W. Riccardi and Walter Ramsey, doing business as Riccardi & Ramsey, who had acquired the assets of Montgomery Investments.

After pleadings had been filed, the defendants moved for summary judgment. In conjunction with the motion, a number of affidavits and other documents were submitted.

The trial court examined the summary judgment motion and the supporting documents and concluded that there were no genuine issues of material fact in the case and, in effect, ruled that under the particular facts of the case Montgomery Investments was not responsible for the landslide which occurred and that Woodland Realty, Inc., J. W. Riccardi, and Walter Ramsey, as successors to Montgomery Investments, Inc., could not be held responsible for the torts of that corporation.

On appeal, the appellant's first assertion is that the circuit court erred in finding that Montgomery Investments, Inc., was not liable for the damages which resulted from that landslide. Essentially, the appellant claims that Montgomery Investments, Inc., had a legal obligation to maintain its land and that the documents presented to the circuit court, on their face, show that Montgomery Investments failed to comply with that duty. The appellant argues that under the circumstances summary judgment was inappropriate.

Montgomery Investments, Inc., and the other appellees argue that they should not be held liable simply because Montgomery Investments, Inc., owned the land where the landslide originated. They argue that they did not conduct mining operations on the property and that, by implication, they did not create the mining tunnels or portal which, according to the investigation by the Office of Surface Mining, may have contributed to the landslide. They also argue that they did not do any act or omit to do any act contributing to the impoundment of water. They, in effect, argue that, because the artificial conditions which possibly contributed to the landslide are attributable to a prior owner, they are not responsible for the damage.

The facts of the present case are, in many respects, similar to the facts considered by the Supreme Court of Arkansas in *Dye v. Burdick,* 262 Ark. 124, 553 S.W.2d 833 (1977). In the *Dye* case, the plaintiffs' home was destroyed by flooding which resulted from the bursting of a dam located on property owned by the defendants. The defendants had purchased their property some four years previously, and at the time of the purchase the dam which subsequently broke was already present. The landowner defendants argued that they had not built the dam and the fact that prior landowners had created the instrumentality of damage insulated them from liability when the dam broke during a time of extraordinary rainfall. The lower court accepted the defendants' argument and directed a verdict for them.

The Supreme Court of Arkansas, on appeal, examined the law on the question and indicated that:

> The general rule, or at least what we take to be the better rule, is properly stated by the text writer in § 218, Waters, 78 Am.Jur.2d 665, viz: "As a general rule, the person who is in possession and control of a dam or reservoir at the time it gives way is the one responsible for the injuries caused thereby. Thus, the grantee of a dam which was negligently constructed in the first instance is liable for injuries caused by its giving way, although he has received no express notice of the defective condition of the dam."

*Dye v. Burdick, supra* at 132, 553 S.W.2d at 836. The court concluded that landowners were potentially liable even though they had not built the dam. In reaching this conclusion, the court analyzed the *Restatement (Second) of Torts* § 366 (1965).

The Court noted that, under the *Restatement* provision, a vendee landowner's liability is not absolute, but arises only upon a showing that he was negligent in failing to

discover defects and in failing to correct them.

■ The *Restatement* provision upon which the Arkansas Court relied, *Restatement (Second) of Torts* § 366 (1965), provides that:

One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,

(a) The possessor knows or should know of the condition, and

(b) He knows or should know that it exists without the consent of those affected by it, and

(c) He has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it.

In explaining this section, the commentators on *Restatement* indicated that:

It is not ... necessary to the liability of one who takes possession that he in fact discover the dangerous condition. It is enough that he should know of it. "Should know" is defined in § 12 as meaning that a person of reasonable prudence and intelligence, or of the superior intelligence of the actor, would ascertain the fact in question in the performance of his duty to another, or would govern his conduct on the assumption that such fact exists. Where possession is acquired voluntarily, as by purchase, lease, or the acceptance of a gift, the person taking possession is required to make reasonable inspection and inquiry as to the condition of the land. As to any defects, disrepair, or other dangers which are patent and obvious, he therefore should know of their existence at the time he takes possession. Even as to latent defects, the vendee or lessee may have enough in the way of information or warning to lead a reasonable man to investigate, so that he "should know." Where he has no such information or warning at the time he takes possession, his long continued occupation and use of the land may in itself justify the conclusion that he should have discovered the danger. For example, a possessor who has used land for years may reasonably be presumed to know every condition or danger upon it, or to have failed to exercise reasonable care to investigate and discover it.

In *Dye v. Burdick, supra,* the Arkansas Court concluded that where some of the evidence developed indicated that a defect in the dam on the defendants' property caused the dam to break and that the defendants had owned the property for some time, then there was sufficient evidence to present the case to a jury. The court concluded that it is the jury's responsibility to determine whether a defect caused the break, whether the defendants knew or should have known of the defect, and whether they failed to take reasonable measures to protect the plaintiffs. The Arkansas Court concluded that the lower court's direction of a verdict in favor of the defendants was inappropriate. The Court also specifically indicated that the fact that the landowner defendants did not build the dam, but bought the land several years after the dam was built, did not insulate them from liability arising from the defective construction or inadequate design of the dam.

In the case of *Schropp v. Solzman,* 314 N.W.2d 413 (Iowa 1982), the Iowa Court, in a similar case, reached conclusions essentially the same as those in the Arkansas case.

It may be concluded from the *Dye* case, the *Schropp* case, as well as the *Restatement (Second) of Torts,* that the fact that a defendant did not create an artificial hazardous condition does not insulate him from liability. The real thrust of the authorities is that if there is a hazardous artificial condition, a landowner has an obligation to correct it within a reasonable period of time after learning of its existence or after he should learn of its existence, provided the adjoining landowners do not consent to the existence of the hazardous condition.

In *Peneschi v. National Steel Corp.,* 170 W.Va. 511, 295 S.E.2d 1 (1982), this Court

looked with favor upon the *Restatement*'s analysis of problems similar to the ones presented in the present case. In *Peneschi*, the Court specifically stated that the *Restatement's* approach to problems of the type presented in the landmark flooding case of *Fletcher v. Rylands*, 3 H. & C. 774, 159 Eng.Rep. 737 (1865), *rev'd Fletcher v. Rylands*, L.R. 1 Ex. 265 (1866), *aff'd Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868), as articulated in the *Restatement (Second) of Torts* was adopted into the law of this jurisdiction.

In approaching the questions presented in the present case, this Court believes that the analysis developed by the *Restatement (Second) of Torts* § 366 (1965) and in the cases which follow it is reasonable and is consistent with the law as it is evolving in this jurisdiction. Accordingly, the Court concludes that the *Restatement* should provide the framework for the resolution of the problems presented in the present case.

This Court indicated in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), that:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*See Lowery v. Raptis*, 174 W.Va. 736, 329 S.E.2d 102 (1985); *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980); *Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978); *Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971).

■ Under the principles set forth in *Restatement (Second) of Torts* § 366 (1965),

the appellees in the present case are potentially liable if a rather complex set of facts can be established. It must be shown that the landslide was attributable to artificial conditions upon their property; it must be shown that Montgomery Investments, Inc., knew or reasonably should have known of the conditions; it must be shown that Montgomery Investments, Inc., failed to correct the conditions within a reasonable time after it should have learned of them; and finally it must be shown that the appellant did not expressly or implicitly consent to the continued existence of the conditions.[1] This Court believes that the record, as developed for the circuit court, raises substantial questions as to a number of those facts. It is not completely clear that the artificial conditions on the Montgomery Investments' land were the cause of the landslide. It is not clear that Montgomery Investments, Inc., reasonably should have known of the conditions, and, finally, it is not clear whether the appellant expressly or implicitly consented to the continued existence of the conditions. In view of the rule presented in the *Aetna Casualty* case that summary judgment should be granted only where there is no genuine issue of fact and only where inquiry concerning the facts is not desirable to clarify the law, this Court believes that the Circuit Court of Fayette County erred in granting summary judgment.

The Court notes that the appellant argues that the appellees should be held liable as a matter of law. She argues that the doctrine of *res ipsa loquitur* applies under the facts presented and that, when the doctrine is applied, it establishes that the appellees were negligent as a matter of law.

---

1. The Court feels that it is important to stress that the present case deals with *artificial* conditions upon the defendant landowners' property. The *Restatement,* as well as many cases, treat *natural* conditions differently. The rule relating to natural conditions is stated in the *Restatement (Second) of Torts* § 363 (1965), as follows:

    (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

    (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

    As to the landowner's liability for discharge of surface water onto adjoining lands, *see Morris Associates, Inc. v. Priddy*, 181 W.Va. 588, 383 S.E.2d 770 (1989).

A key requirement of the doctrine of *res ipsa loquitur* is that it must be shown that the instrumentality which caused the damage was in the exclusive control of the defendants. As stated in syllabus point 2 of *Royal Furniture Co. v. City of Morgantown*, 164 W.Va. 400, 263 S.E.2d 878 (1980):

> Before the doctrine of *res ipsa loquitur* is applicable, three essentials must exist: 1) the instrumentality which causes the injury must be under the exclusive control and management of the defendant; 2) the plaintiff must be without fault; and, 3) the injury must be such that in the ordinary course of events it would not have happened had the one in control of the instrumentality used due care.

In the present case, there is some suggestion that mining tunnels riddle much of the land around the appellant's property, including the land owned by Montgomery Investments, Inc. From the report of the Office of Surface Mining on the cause of the landslide, it is unclear as to whether the tunnels contributing to the runoff were in the exclusive control of the appellees. These circumstances raise a substantial factual issue as to whether the instrumentality of injury was actually in the exclusive control of the appellees. This Court believes that this factual issue precludes a ruling that the appellees are liable as a matter of law. Additionally, in cases such as this, as has already been discussed, it must also be shown that the defendants knew or reasonably should have known of the defect and that they failed to correct it within a reasonable time.

Another question presented by the appellant is whether Woodland Realty, J. W. Riccardi, and Walter Ramsey should be held responsible for the torts of Montgomery Investments, Inc., in view of their relationship with that company.

In conjunction with this, the appellant argues that Woodland Realty owned all the stock of Montgomery Investments, Inc. Additionally, most of the shareholders of the two corporations are identical. Mr. Riccardi and Mr. Ramsey were the major shareholders. The appellant argues that public records indicate that Mr. Ramsey and Mr. Riccardi dealt with each other on less than an arms length basis. She argues that the only consideration for the transfer of property from Montgomery Investments, Inc., to Woodland Realty was the cancellation of stock and that the transaction was not between completely independent entities. It, in effect, was a transfer of legal title between entities which had the same interests.

The appellant also argues that when Woodland Realty sold the property to Mr. Riccardi and Mr. Ramsey on October 24, 1986, almost no consideration was paid and that there was again a legal transfer of assets among entities with identical interests.

The appellant claims that even if Woodland Realty, Mr. Riccardi, and Mr. Ramsey are not liable for the torts of Montgomery Investments, Inc., they are liable as successors and stockholders in an insolvent or liquidated corporation. She cites *Bankers Pocahontas Coal Co. v. Monarch Smokeless Coal Co.*, 123 W.Va. 53, 14 S.E.2d 922 (1941), for the proposition that when the assets of a dissolved company have been distributed among the stockholders, a creditor having an enforceable cause of action against the corporation may hold the stockholders liable to the extent of the assets received by them.

There is law in West Virginia to the effect that under the appropriate circumstances a court may "pierce" the corporate "veil" and hold the shareholders of a corporation responsible for the corporation's obligations. *See, e.g., Southern States Co-Op, Inc. v. Dailey*, 167 W.Va. 920, 280 S.E.2d 821 (1981); *DeStubner v. United Carbon Co.*, 126 W.Va. 363, 28 S.E.2d 593 (1943); *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936).

The appellant is also correct in stating that *Bankers Pocahontas Coal Co. v. Monarch Smokeless Coal Co., supra,* does recognize that under certain circumstances the successors of a corporation may be held liable for certain obligations of the corporation.

In the case presently under consideration, this Court believes that the evidence is insufficiently developed for the Court to resolve in a fair manner the question of whether the corporate veil should be pierced or that the individual appellees should be held responsible to some extent for Montgomery Investment, Inc.'s obligations. At the very least, the Court believes that further development of the facts is desirable to clarify the application of the law.

For the reasons stated, the judgment of the Circuit Court of Fayette County is reversed and this case is remanded for trial on the merits.

Reversed and remanded.